## C. R. BISHOP *vs.* EDWARD EVERETT *et al.*

### ASSUMPSIT. BEFORE JUDD, J.

### MARCH, 1875.

Taking of testimony, on collateral facts involved upon demurrer, allowed, under Sections 1112, 1113, Civil Code.

Part-owners of a vessel held to be partners.

Garnishee process cannot hold debt of garnishee to a partnership, in an action of assumpsit against one of the partners for a private debt.

Demurrer sustained.

### DECISION OF JUDD, J.

This is an action of assumpsit on a promissory note, upon which summons and garnishee process against B. F. Bolles were issued February 8, 1875, and service made the same day. The defendant Everett filed, on the 10th February, a demurrer admitting his indebtedness to plaintiff, but setting up that as

the judgment-debt was owing by Bolles, garnishee, to *him* and one W. J. Rawlins jointly, being co-partners, the garnishee process cannot secure it to pay the debt of Everett alone. Issue being joined on the demurrer, the Court, under Sections 1112 and 1113 of the Civil Code, took testimony as to whether Everett and Rawlins were co-partners.

### BY THE COURT.

I am of the opinion that testimony is admissible as to whether Everett and Rawlins were co-partners in the transaction whence this judgment-debt in their favor arose, as Section 1113 of the Civil Code authorizes the taking of testimony on the collateral facts involved upon a demurrer.

The liability of Everett to Bishop is the main point in the case; the existence of the co-partnership between Everett and Rawlins is a collateral fact raised by the demurrer, and which is decisive of the question whether the garnishee can be charged. As already decided in *Everett vs. Bolles, ante,* page 153 (on order to the Marshal to show cause), the garnishee process will not secure a debt owing to a co-partnership to pay a claim against one of a firm, for, as there stated, it cannot be made to appear until the co-partnership concerns are adjusted, whether an individual copartner be a creditor or a debtor of a firm.

Story defines a copartnership to be a "voluntary contract between two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of profits between them."

Lindley on Co-partnership, Section 12, says: "An agreement to share profits and losses may be said to be the type of a partnership contract."

With this definition in mind, do the facts show the relation of partners between Everett and Rawlins?

It appears from the records of this Court that the judgment in their favor was from the proceeds of the schooner Kamaile, owned by E. Everett and W. J. Rawlins, and of the oil taken by the vessel in a whaling voyage.

It is contended on the part of the plaintiff that part owners of vessels are not partners.

Story on Partnership, Section 417, says that part owners of vessels, in the absence of all stipulations to the contrary, become tenants in common of the vessel, and not joint tenants—that is, there is no survivorship, and each part-owner can sell only his own share.

Story says further, Section 441, Partnership, that "there is little doubt that part-owners of a ship, who purchase a cargo and engage in a common voyage and adventure upon the joint account and profit of all concerned, have a lien for all disbursements and advances, as well as for their share of the profits, upon the property employed in such voyage or adventure and its proceeds; for, as to such voyage or adventure, they are treated as partners and not merely part-owners."

Lord Hardwicke, in *Doddington vs. Hallet*, 1 Vesey, Sr., sustained this lien; but it was overruled by Lord Eldon in *Exparte Young*, 2 Vesey & B. But later, Lord Tenterden in *Holderness vs. Shackles*, 8 B. & C., 612, adopted Lord Hardwicke's view.

Parsons, in his 1 Maritime Law, page 102, says the cases on this subject "are in irreconcilable conflict," and thinks that "a part-owner *as such* has no lien whatever; but acquires such a lien when any of the elements of partnership (or agency with bailment) upon which a lien may vest, enter into his relation with the other part-owners."

In the many cases which have been cited by counsel, but which I will not repeat here, the principle seems to be clearly settled that where the facts in any case of shipowners disclose a *partnership,* the existence of a lien results from it as a necessary consequence, according to the principles of all co-partnerships.

In the case before me, it is in testimony by Captain Peterson, that Rawlins put some $1,700 in the schooner Kamaile and her outfits, on the understanding that he was to receive a share of the proceeds according to the amount invested after *paying the bills;* and the witness said that by "proceeds" was meant "what was left after the voyage was settled."

I understand this to mean an agreement to share in the profits of the adventure, which, according to definitions above given, constitutes a partnership.

The case of *Bulfinch vs. Winchenback and Trustees*, 3 Allen, 161, is in point. The head note reads: "If two persons agree together to prosecute a voyage in a vessel jointly, each contributing services and time, and sharing in profits and losses, they are partners; and freight earned in a voyage so prosecuted cannot be attached and held by a trustee process against one of them alone."

It seems to me that justice as well as public policy requires that all such cases be treated as *quasi* partnerships with reference to the intended voyage or adventure, for each co-owner being liable *in solido* for all the expenses, repairs and outfits of a ship, it is but right that a part-owner, paying out more than his share, should be allowed to reimburse himself from the proceeds of the adventure before any private debt of one owner be paid.

Demurrer sustained.

*W. C. Jones,* for plaintiff.

*A. S. Hartwell,* for defendants.

Honolulu, March 16, 1875.